FILED
2004 JAN -6 PM 4:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

ALDRIDGE INDUSTRIES, INC.,

    Plaintiff,

v.                                        CASE NO.: CV-03-J-2155-NE

THE UNITED STATES MINT,

    Defendant.

ENTERED
JAN 6 2004

## MEMORANDUM OPINION

Pending before the court is the defendant's motion to dismiss or, alternatively, for summary judgment (doc. 2), a memorandum and evidence in support of said motion. The plaintiff filed a response to said motion (doc. 10). The court having considered the pleadings, motion, memoranda and evidence, finds as follows:

The plaintiff brought suit under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, for misappropriation of a trade secret. Pursuant to a contract between the parties, the plaintiff constructed and delivered to defendant machines for finished grinding of U.S. Mint coin dies. The contract was dated February 28, 1995. Numerous modifications were thereafter made to the contract from 1995 to 1999.

The plaintiff contends in this litigation that the design of the machines was a trade secret and proprietary. The machines in question used an "automatic vision part alignment system" which was developed by the plaintiff pursuant to Modification 11. The plaintiff asserts that, prior to September 11, 2000, the defendant allowed other

manufacturers to view and reverse engineer the plaintiff's system. *See* Complaint, ¶ 16. Thereafter, the defendant sold the machines in question on the open market with plaintiff's allegedly trade secret software still intact. Complaint, ¶¶ 14, 16. The defendant asserts plaintiff had no such trade secrets in the machines. Plaintiff sues for misappropriation and conspiracy.

The defendant filed the pending motion to dismiss asserting that this is a contract claim, not a tort claim, and thus this court lacks jurisdiction under the Federal Tort Claims Act.[1] The plaintiff does not dispute that this court would lack jurisdiction if, in fact, this is a contract claim. Rather, the plaintiff disputes that it has stated any claims other than torts.

This court lacks jurisdiction over any claim against the United States in excess of $10,000.00 that is based on an express or implied contract with the United States. The Tucker Act, 28 U.S.C. § 1491(a)(1), places jurisdiction over such claims exclusively in the Court of Federal Claims.[2] Neither party alleges that the plaintiff's claims are worth less than $10,000.00.

The plaintiff argues that it contracted with defendant to provide specific machinery, and it did so. After that, the contract ended. The defendant argues

---

[1] Defendant also asserts that the U.S. Mint is not a proper party under the FTCA. The plaintiff has stated it will amend its complaint to name the United States instead of the U.S. Mint.

[2] The court notes that a further issue exists as to whether the Court of Federal Claims has jurisdiction over the United States Mint under the Tucker Act. This court does not need to resolve any such issue to rule on the pending motion. Either the claims before this court sound in tort and this court has jurisdiction, or they sound in contract, and the court does not.

Modification 11 created a contractual agreement between the parties. Modification 11 is essentially the order form for the automatic alignment vision system. That Modification states that the cost of such system will be $75,000.00, but that the defendant will receive an offset for other technology it purchased from plaintiff which did not perform acceptably. Modification 11 further states that "[t]he price includes all R&D work plus a two-year guarantee."

The plaintiff's complaint asserts that the modification made to the machinery due to the specifications of Modification 11 was proprietary and the subject of a trade secret. Complaint, ¶¶ 14-19. Defendant alleges plaintiff retained no proprietary interest in the machinery. Regardless of who prevails upon consideration of the evidence, the court finds that the plaintiff's claims necessarily sound in contract. While case law regarding this issue is sparse, the court does find that they support a finding of either as tort or contract claims.[3]

In *Aktiebolaget Bofors v. US*, 194 F.2d 145, 148 (D.C.Cir.1951), the court held that a "licensee who uses the secret for purposes beyond the scope of license granted by the owner is liable for breach of contract, but he commits no tort." The court was of the opinion that any right of the owner which was invaded had to be created by

---

[3]*Compare e.g., Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C.Cir.1982); *Kramer v. Secretary*, 653 F.2d 726, 729-30 (2nd Cir.1980) (stating that the essence of the tort of misappropriation of a trade secret is the unauthorized disclosure of secret information obtained through a breach of confidence, including breach of a good faith representation that a confidence would be protected as well as a fraudulent misrepresentation to the same effect) *with Bellsouth v. US.*, 991 F. Supp.920 (E.D.Tenn.1996) (where the court held that, because it had to refer to a contract to determine property ownership, the claims at issue arose in contract, not tort law).

contract. *Id.* Distinguishing the tort claim from the contract claim, the Court explained that "[t]he tort lies in the wrongful acquisition. But one who has lawfully acquired a trade secret may use it in any manner without liability unless he acquired it subject to a contractual limitation or restriction as to its use." *Id.* Further delineating the distinction between contract and tort claims for misappropriation of trade secrets, the Court in *BellSouth* stated:

> In *Megapulse*, the government contractor sought to enjoin disclosure of allegedly proprietary data developed before the contractor entered into a contract with the United States Coast Guard.... The contractor did not claim any breach of contract, and limited its request for relief, which was entirely nonmonetary, to six documents which reflected technology asserted to have been developed before the contractor's first contract with the Coast Guard.... In the case at bar, in contrast, not only did none of the property which is the subject of this dispute antedate any government contract, but this property came into being solely because of the existence of the government contract and BellSouth's performance of it. For this reason, BellSouth cannot deny that it has a "claim against the United States founded ... upon [an] express or implied contract with the United States" within the meaning of 28 U.S.C.A. §1491(a)(1).

*BellSouth*, 991 F.Supp. at 929, (*quoting Megapulse, Inc. v. Lewis*, 672 F.2d 959, 961-63, 969 (D.C.Cir.1982).

In the facts before this court, the property in question was developed because of the plaintiff's contract with the United States to provide such technology. Rather than seeking solely nonmonetary damages, the plaintiff seeks $18.5 million. Assuming the plaintiff could produce evidence to support its claim that the defendant did not outright own the plaintiff's "trade secret," that understanding of ownership had

4

to arise from Modification 11. Defendant asserts it never contracted for the plaintiff to retain any such rights. Plaintiff claims the defendant knew the same was proprietary. Regardless of who ultimately prevails on this issue, the only source of such property rights has to be the Contract and Modifications. In *Aktiebolaget,* the Court noted that, regardless of whether the plaintiff retained an interest in that property, any such retention of rights had to, necessarily, arise from the understanding (i.e. contract) between the parties. *Id.,* 194 F.2d at 148. Likewise, assuming reverse engineering occurred, this would only violate plaintiff's retained interest in the machinery if the defendant somewhere agreed (i.e. contracted) to keep such information secret.

Having determined that the plaintiff's claims are based in contract, the court finds that it lacks jurisdiction over said claims due to the Tucker Act. As that Act places exclusive jurisdiction over contract claims against the United States for more than $10,000.00 in the Court of Federal Claims, the motion to dismiss shall be granted by separate Order.

**DONE** and **ORDERED** this the ___6___ day of January, 2004.

_____
UNITED STATES DISTRICT JUDGE
INGE P. JOHNSON